OPINION OF THE COURT
Cooke, J.
Any city, county, intermediate school district, or school district approved by the State University trustees may, alone or in combination with other local sponsors, establish a community college (see, generally, Education Law, §§ 6301, 6302). Each college, in addition to admitting the residents of local sponsors, is required to admit students who live in other counties (§ 6305, subd 1). The college may, however, elect to charge the counties in which its nonresident students reside for an allocable portion of the operating costs of the college and a further sum for capital costs incurred to provide facilities in which such nonresident students can be accommodated (subd 2). This case concerns a dispute over a claim for capital costs.
Formerly, the capital charge-back allowed to community colleges was a flat $300 yearly per nonresident student. However, in 1975 the Legislature amended the Education Law to provide that the capital charge-back should be a sum "hot to exceed three hundred dollars each year to be determined and approved by the State University Trustees” (L 1975, ch 646, § 1; emphasis added). It had been commented that the inflexible $300 charge previously permitted had little relationship to the actual needs of the college which received the charge-back fee. Thus, the law was amended to enable the State University board of trustees to determine what the appropriate charge- *411 back rate should be for each college, and thereby to correct the situation which allowed some institutions to accumulate unnecessarily high capital funds which could only be used for more construction (see NY Legis Ann, 1975, p 165).
The amendment requiring the board of trustees to determine and approve a capital charge-back rate became a law on August 5, 1975, but by its terms the law was not effective until the first day of September next succeeding the date on which it became a law (L 1975, ch 646, § 2), i.e., September 1, 1975. This controversy concerns the. period between the September 1 effective date of the law and the promulgation of regulations, which were filed on December 29, 1975, setting forth guidelines for determining a charge-back rate.
On October 15, 1975, Corning Community College billed the County of Chemung for the sum of $157,340 for Chemung residents who would attend the college for the fall 1975 semester. The county objected to the charge which was based on the flat $300 sum,* and sought advice from the State University. The office of the university counsel advised that proposals for capital charge-back rates would be considered at the regularly scheduled November (1975) board of trustees meeting and that the former regulations providing for the $300 amount would control until the new regulations took effect. Further correspondence from the counsel’s office indicated that the new regulation became effective beginning after January 1, 1976, and hence that Chemung County would be liable for a capital charge-back for the fall 1975 semester even though, according to the State University’s data as applied against the new regulation, Corning would not be entitled to a charge-back for the 1976 spring semester.
The county persisted in its refusal to pay the capital cost charge-back and this action ensued in which the college seeks judgment against the county in the sum of $157,340, plus interest. The facts are not in dispute and the action was commenced on submitted facts pursuant to CPLR 3222. The State University, although not a party, has submitted a brief as amicus curiae.
By a divided court, the Appellate Division upheld the college’s claim. The majority concluded that it would be impossible for the trustees to institute the change immediately and *412 reasoned that the Legislature must have intended the old law to remain in effect until the new law could be effectuated. It also rejected the county’s ancillary arguments that the college may only collect capital charge-backs for costs incurred during the academic year and that the existence of a surplus in a capital reserve account precludes the college from recovering any contribution from the defendant. The dissenters in that court urged that the defendant county should not be made to pay the maximum charge permitted merely because the State University trustees found it difficult or inconvenient to comply with the new law. For the reasons that follow, we would reverse the order of the Appellate Division.
The legal analysis of this issue must begin with a recognition that the amendment under consideration was not self-executing in the sense that it did not lower the capital charge-back rate from the set $300 amount to some other flat amount. Rather, the amended law authorized the State University board of trustees to determine and approve a sum not to exceed $300 per year for each nonresident student. As noted by the dissent in the Appellate Division, reliance on the old regulation is unwarranted since it was based on the former statute which simply provided for an unvarying amount. Moreover, a reading of the statute belies any suggestion that the $300 rate was to remain in effect until the trustees determined a lower amount. Thus, the issue to be resolved is what is the consequence of the failure of the trustees to determine and approve a charge-back rate for the period in question.
Considerable dependence has been placed on the impossibility of determining the appropriate rates by the middle of October, 1975. Neither the presumed difficulty nor the suggested date are supported in the record or by the statute. As noted by the Appellate Division dissent, the conclusion concerning the supposed inability to comply amounts to speculation. Moreover, contrary to the suggestion that the trustees had only until October 15, 1975 to determine a charge-back rate, compliance could have been accomplished at least as late as December 15, 1975. The statute as amended requires the State University to notify the county of the capital charge-back rate for each community college (Education Law, § 6305, subd 4). Nothing in the statute suggests that the charge-back rate had to be determined by the date of billing (Oct. 15) rather than the date of payment (Dec. 15), and hence the *413 trustees would have had this further period in which to make their determination. Since the college was well aware that the new law authorized the trustees to limit the amount of the charge-back, it could no longer rely on receiving the full $300 rate and should not have been surprised to receive payment of less than the amount billed.
Significantly, there is no indication from the State University that the regulation, which was filed on December 29, 1975, could not have been filed a mere 14 days earlier, on December 15, 1975, which was the date payment was due from defendant county, and presumably from other counties to other colleges. In fact, the Chancellor sent the trustees a recommendation on October 22, 1975, suggesting that they adopt a regulation which provides the same basic guidelines for determining the charge-back rate contained in the regulation as filed in late December. Moreover, by at least mid-November, 1975, the university counsel was aware of the controversy leading to this litigation. Furthermore, it should not be forgotten that the statute was approved on August 5, 1975, and, according to the amicus curiae brief, the amendment was proposed after consultation with the State University.
There is nothing to suggest that the regulation and effectuation of the law could not have been accomplished sooner. As for the task of computing the resources and anticipated capital expenditures of the community colleges across the State, those supporting the new law contemplated that since the State University staff was already responsible for determining operating charge-backs, the further task of making capital charge-back computations would create only a minor increase in workload (see NY Legis Ann, 1975, p 165). Since a proposed regulation was circulated to the trustees in late October, 1975, it would appear that whatever computations were necéssary had been made prior to that time. With this in mind, it is manifestly unreasonable to speculate or infer that it was impossible to adopt a regulation prior to the December, 1975 payment date for the various colleges.
The question, in essence, is who should suffer the consequences of the fact that the trustees did not determine and approve a capital charge-back rate for the period involved. We conclude that the correct result is that the capital charge-back sought should not be allowed under the old regulation. The statute mandates a determination by an administrative body *414 and, as noted, the old regulation cannot be relied on as a substitute for the required approval. While there may be instances where administrative difficulty may be a permissible basis for delaying implementation of a law, under the circumstances presented here the court should not speculate as to the impossibility of a timely fulfillment of this responsibility. To be sure, no deference should be given to an interpretation of a statute by an administrative agency, if that interpretation authorizes or permits it to act contrary to law so as to delay implementing a new law. It was incumbent on those charged with administration to devise whatever administrative plan was necessary to implement the law in a timely fashion. As a matter of policy, the court should not grant an extended life to a dead law simply to overcome a delay of this sort.
Accordingly, the order of the Appellate Division should be reversed, without costs, and judgment granted in defendant’s favor.

 The amount sought represents the capital charge-back for the fall 1975 semester at the rate of $150 per student.